In the Matter of MELVIN FULLER et al., Appellants, v. CHARLES J. URSTADT, as Commissioner of New York State Division of Housing and Community Renewal, and Commissioner of New York State Housing Finance Agency, Respondent.—

No opinion. Munder, Acting P. J., Martuscello, Latham and Kleinfeld, JJ., concur; Benjamin, J., dissents and votes to reverse the judgment insofar as appealed from, to annul respondent's determination, and to remit the matter to respondent for reconsideration after notice to petitioners of the reasons for their eviction and an opportunity for petitioners to rebut those reasons at a hearing, with the following memorandum: Respondent State Housing Finance Agency is a public benefit corporation created to facilitate the financing of low income housing. Since 1964 it has had statutory power to rent apartments in Mitchell-Lama developments and sublet them at lower rentals to low income families. In 1964 it leased a number of apartments in Ebbets Field Housing, a Mitchell-Lama development, at rentals payable by it to Field Housing Co., Inc., a limited-profit company which owns Ebbets Field Housing. The lease authorized respondent to sublet the apartments to those it found eligible under the Private Housing Law. On July 1, 1966 respondent sublet one of its Ebbets Field apartments to petitioners for a three-year term at a rental of $113.56 per month —substantially less than it paid to Field. It is undisputed that ordinarily such leases are renewed for another three-year term if the subtenant is still qualified by income standards and has fulfilled his lease obligations. On April 24, 1969 respondent notified petitioners that they had been found ineligible for their apartment and their sublease would be terminated on May 26, 1969. Petitioners' sublease expired on June 30, 1969 and it was not renewed. A Civil Court holdover proceeding against petitioners was dismissed on procedural grounds and on August 4, 1969 petitioners received another notice to vacate which again stated that they had been found ineligible for occupancy under the low-cost housing program. On November 6, 1969 respondent instituted another holdover proceeding against petitioners in the Civil Court. On November 14, 1969 peti-

tioners brought this proceeding to annul respondent's determination that they were no longer eligible for occupancy of their apartment and for remission of the matter to respondent for reconsideration. Petitioners alleged that prior to April 24, 1969 they were never notified that their continued eligibility was under consideration and were neither told why they were ineligible nor given an opportunity to rebut the undisclosed reasons why they were believed ineligible; and that it was not until after they had been notified that they were ineligible and must vacate the apartment that they were told they had been found undesirable as tenants because their children were disruptive. Basically, they contended that they could not be summarily evicted and were entitled to notice of the charges against them and an opportunity to rebut those charges at a hearing. Special Term dismissed the petition, holding that respondent could evict petitioners without giving them a hearing. In light of our holding in *Matter of Vinson* v. *Greenburgh Housing Auth.* (29 A D 2d 338), I think Special Term's determination was wrong and should be reversed. In *Vinson* we held that a State agency owning and operating a low-rent public housing project could not arbitrarily evict a low-income tenant and that it had to meet the requirements of due process by giving the tenant notice of its reasons for the proposed eviction and an opportunity to rebut them. So holding, we said: "'The government as landlord is still the government. It must not act arbitrarily, for, unlike private landlords, it is subject to the requirements of due process'" (p. 341). In my opinion, *Vinson* is not distinguishable and it controls the case at bar. It is irrelevant that in *Vinson* the property was owned by a public corporation, while in this case the public corporation is not the owner of the property but only the prime lessee of a number of apartments which it has sublet to low-income tenants. Regardless of that legalistic distinction between the two cases, the fact remains that in this case, as in *Vinson*, it is the public corporation (an instrumentality of the State) that had the power to decide whether petitioners were eligible for an apartment; it is the public corporation that found them eligible and leased the apartment to them at a rental fixed by itself; it is the public corporation that had the power to decide whether petitioners remained eligible during the term of their lease, whether they were eligible for a new lease at the expiration of their original lease, and whether they should be given a new lease and allowed to remain in occupancy under it. In fact, then, the relationship between the tenant and the State instrumentality in this case was essentially the same as in *Vinson*; and the State instrumentality's control of the tenancy likewise was the same here as in *Vinson*. Hence, the rationale of *Vinson* applies with equal force in this case; and logic, consistency and justice all require that our holding be the same. I therefore vote to reverse, annul respondent's determination, and remit the matter to respondent for reconsideration after notice to petitioners of the reasons for their eviction and an opportunity for petitioners to rebut those reasons at a hearing.